IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

LAMAR KEMP                                                                                    PLAINTIFF

v.                              Civil No. 6:22-CV-06085-SOH-MEF

WELLPATH, LLC, Medical Services Provider
for the Arkansas Division of Corrections;
DR. THOMAS N. DANIEL, Day Clinic, Special Needs Unit;
DR. NANNETTE VOWELL, Hospital, Special Needs Unit; and
NURSE HARRIS                                                                              DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by Plaintiff, Lamar Kemp, a prisoner, pursuant to 42 U.S.C. § 1983.   Plaintiff proceeds *pro se* and *in forma pauperis* ("IFP").   Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purposes of making a Report and Recommendation on Defendants' Motion for Summary Judgment.   (ECF No. 30).   For the reasons outlined below, the undersigned recommends that Defendants' Motion for Summary Judgment be DENIED, in part, and GRANTED, in part.

**I.      BACKGROUND**

The Court initially viewed Plaintiff's Complaint as consisting of five claims against the Defendants in their official and individual capacities: (1) that Defendants Wellpath, LLC ("Wellpath"), Daniel and Harris denied Plaintiff high-top shoes in violation of the Eighth Amendment; (2) that Defendants Wellpath, Daniel, and Harris denied Plaintiff high-top shoes in violation of the Americans with Disabilities Act (ADA); (3) that Defendants Daniel, Vowell, and Wellpath denied Plaintiff proper medical care from January 2021 until the filing of the Complaint (July 25, 2022), by failing to control his hypertension in violation of the Eighth Amendment;

(4) that Defendants' failure to provide Plaintiff with high-top shoes constitutes negligence and malpractice under Arkansas state tort laws; and (5) that Defendants' failure to control Plaintiff's hypertension from January 2021 until the filing of the Complaint (July 25, 2022), constitutes negligence and malpractice under Arkansas state tort laws.   (ECF No. 1).

Upon initial review of Defendants' Motion for Summary Judgment, memorandum, and statement of facts in support, the Court ordered Defendants to clarify whether they are pursuing summary judgment as to all or only some of Plaintiff's claims.   (ECF No. 39).   Plaintiff responded saying that he was not pursuing a separate claim under the ADA, but rather asserting that Defendants' failure to comply with the ADA is evidence in support of his claims that Defendants violated the Eighth and Fourteenth Amendments in failing to provide him with high-top shoes.   (ECF No. 40).   Defendants subsequently filed a Supplement in support of their Motion for Summary Judgment.   (ECF No. 41).

The Court then directed Plaintiff to file any response to the Supplement by August 4, 2023. (ECF No. 42).   After granting Plaintiff's request for an extension of time to file his response, Plaintiff filed a Motion to Stay the proceedings asserting that his legal paperwork had been taken from him and that the person assisting him could no longer do so.   (ECF Nos. 45, 46).   The Court denied Plaintiff's request for a stay, granted him additional time to respond to Defendants' Supplement in Support of the Motion for Summary Judgment, and ordered the Arkansas Division of Correction ("ADC") to return Plaintiff's legal paperwork to him.   (ECF Nos. 47-48).   On October 2, 2023, the Court received notification that Plaintiff's legal paperwork had been returned to him.   (ECF No. 51).

Plaintiff subsequently filed a self-styled Motion for Reversal, asserting that he had received a disciplinary sanction for allowing another inmate to assist him with these proceedings.   (ECF

No. 50).   The Court denied that motion, construing it both as a motion to amend and as a motion to supplement the Complaint.   (ECF No. 52).   The Court has now received Plaintiff's response to Defendants' Supplement to the Motion for Summary Judgment and a supplemental statement of undisputed facts in support.   (ECF Nos. 53-54).   Defendants' Motion for Summary Judgment is therefore ripe for consideration.

## II.   LEGAL STANDARD

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party."   *Ward v. Olson*, 939 F. Supp. 2d 956, 961 (D. Minn. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).   A fact is material only when its resolution would affect the outcome of a case.   *Anderson*, 477 U.S. at 248.

Further, the moving party bears the initial burden of identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."   *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001).   In response, the non-moving party "may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial."   *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). In considering a summary judgment motion, the court views all the evidence and inferences in the light most favorable to the non-moving party.   *Anderson*, 477 U.S. at 255.

## III.   SUMMARY OF THE FACTS

Plaintiff is in the custody of the Arkansas Division of Correction (the "ADC").   (Def. Stat. Undisputed Facts ¶ 1, ECF No. 32).   Plaintiff suffers from hemiplegia from an accident that

occurred prior to his incarceration.[1]   *Id.* ¶ 2.   Plaintiff's medical history is also significant for the removal of his left kidney.   *Id.*   Plaintiff suffers from end-stage renal disease and began receiving dialysis in February 2016.   *Id.*   In addition to hemiplegia, Plaintiff also suffers from hypertension and diabetes.   *Id.*

According to Plaintiff's prison medical records, on March 9, 2021, Plaintiff complained of chest pain during dialysis.   *Id.* ¶ 3.   Defendant Nannette Vowell, M.D., examined him and performed an EKG, which was abnormal, and she then ordered Plaintiff transferred to the hospital for further evaluation.   *Id.*   On March 10, 2021, Defendant Daniel renewed Plaintiff's Lisinopril prescription.   *Id.* ¶ 4.   On March 28, 2021, Plaintiff again complained of chest pains.   *Id.* ¶ 5.   Defendant Vowell ordered Plaintiff to be transferred to the hospital for further evaluation.   *Id.*   On April 9, 2021, Plaintiff reported chest and left arm pain.   *Id.* ¶ 6.   Defendant Vowell examined him, performed another EKG, and then ordered him to be transported to the hospital for further evaluation.   *Id.*   On April 26, 2021, Defendant Daniel renewed Plaintiff's prescription for Clonidine.   *Id.* ¶ 7.

On May 26, 2021, Plaintiff reported that he threw his high-top shoes away.   *Id.* ¶ 8.   On May 31, 2021, Plaintiff complained of nausea and vomiting, he denied chest pains and his respirations were unlabored, but his blood pressure was 227/115.   *Id.* ¶ 9.   Defendant Daniel was notified of Plaintiff's condition and ordered that Plaintiff be placed on observation and that his blood pressure be checked again in one hour.   *Id.*   After re-check, his blood pressure registered

---

[1] The parties dispute *what caused* Plaintiff's hemiplegia.   Defendants claim that Plaintiff's hemiplegia was caused by a motor vehicle accident in 1969.   (Defs.' State. Undisputed Facts ¶ 2; ECF No. 32).   But Plaintiff says that he suffers from "semi-paralysis and atrophy of the left side of his body due to a spinal cord injury he sustained in a diving accident" when he was twelve. (Plaintiff's Resp. Defs.' State. Undisputed Facts ¶ 2; ECF No. 37).   For the purposes of summary judgment, *how* Plaintiff was injured is not material to the Court's analysis.

at 120/61 and he was released from observation.   *Id.*

In June 2021, Defendant Daniel examined Plaintiff.   *Id.* ¶ 10.   Although Plaintiff's blood pressure was under control, Plaintiff reported that he does not take his blood pressure medication in the morning prior to dialysis.   *Id.*   Plaintiff also reportedly said that he had not been walking. *Id.*   Defendant Daniel ordered a consult with orthotics, renewed Plaintiff's blood pressure medication, and counseled him on taking his medication.   *Id.*   On June 24, 2021, Plaintiff returned to Health Services, complaining of chest pain.   *Id.* ¶ 11.   Defendant Daniel examined Plaintiff and noted that he was alert, his vital signs were within normal limits, and that he used a wheelchair for ambulation.   *Id.*   Defendant Daniel ordered an EKG and requested a cardiology consultation.   *Id.*

On August 9, 2021, Defendant Harris offered Plaintiff a "regular" wheelchair, but Plaintiff declined.   *Id.* ¶ 12.   On September 7, 2021, Arkansas Orthotics and Prosthetics ("AOP") examined Plaintiff and did not recommend high-top shoes because Plaintiff was reportedly "non-ambulatory."   *Id.* ¶ 13.   Defendant Daniel renewed Plaintiff's Lisinopril prescription on September 7, 2021.   *Id.* ¶ 14.   On September 7, 2021, Defendant Daniel also examined Plaintiff during Plaintiff's "chronic care" visit.   *Id.* ¶ 15.   During this visit, Defendant Daniel reviewed the report from AOP and prescribed Plaintiff medical shoes and a specialty wheelchair from the Spinal Commission.   *Id.*   Defendant Daniel also again counseled Plaintiff on the importance of taking his blood pressure medication.   *Id.*

On October 11, 2021, Defendant Daniel ordered Hydralazine.   *Id.* ¶ 16.   On October 22, 2021, Defendant Daniel renewed Plaintiff's prescription for Clonidine.   *Id.* ¶ 17.   On January 2, 2022, Defendant Daniel examined Plaintiff during a "chronic care" visit.   *Id.* ¶ 18.   During that visit, Plaintiff again requested "high-top shoes," but Defendant Daniel denied that request based

on the report from AOP saying that high-top shoes were not medically necessary because Plaintiff used a wheelchair for ambulation. *Id.* Defendant Daniel also encouraged Plaintiff to be consistent in taking his blood pressure medication. *Id.* On January 6, 2022, Defendant Daniel ordered Amiodipine. *Id.* ¶ 19.

In March 2022, Defendant Daniel examined Plaintiff during another "chronic care" visit. *Id.* ¶ 20. During that visit, Plaintiff's blood pressure was elevated, and Plaintiff reported that he did not take his medication due to dialysis. *Id.* Defendant Daniel again encouraged Plaintiff to be consistent in his use of blood pressure medication. *Id.* On March 9, 2022, Defendant Daniel renewed Plaintiff's prescription for Lisinopril. *Id.* ¶ 21. On March 10, 2022, Defendant Daniel renewed Plaintiff's prescription for Carvedilol. *Id.* ¶ 22. On April 11, 2022, Defendant Daniel renewed Plaintiff's prescription for Hydralazine. *Id.* ¶ 23. On April 23, 2022, Defendant Daniel renewed Plaintiff's prescription for Clonidine. *Id.* ¶ 24.

On May 25, 2022, Defendant Daniel examined Plaintiff when he returned from the Pulaski Surgical Center. *Id.* ¶ 25. Upon that examination, Defendant Daniel found that Plaintiff's blood pressure was elevated, and he ordered Plaintiff to be administered clonidine, hydralazine, and carvedilol "stat." *Id.* Plaintiff was ordered to stay in the clinic for observation, but he left. *Id.*

In June 2022, Defendant Daniel examined Plaintiff during a "chronic care visit." *Id.* ¶ 26. During that visit, Plaintiff's blood pressure was "well controlled." *Id.* Defendant Daniel again encouraged Plaintiff to be consistent in taking his blood pressure medication. *Id.* On July 7, 2022, Defendant Daniel renewed Plaintiff's prescription for Amlodipine. *Id.* ¶ 27.

Defendants asked Dr. Thomas Braswell, M.D., a family practice and emergency medicine physician in Arkansas, to review Plaintiff's medical records to determine whether Defendants' medical treatment was appropriate. (Ex. 1, Aff. Braswell ¶¶ 2-3, ECF No. 32-1). Upon review

of those records, Dr. Braswell says that the "management of [Plaintiff's] hypertension was appropriate, timely and adequate.   To manage his hypertension, [Plaintiff] was prescribed Lisinopril, Coreg (Carvedilol), Amlodipine, Clonidine and Hydralazine.   These medications were appropriate, were prescribed at the appropriate dosages and were timely renewed."   *Id.* ¶ 5.   Dr. Braswell also says that "[m]edical staff appropriately monitored [Plaintiff's] blood pressure. Maintaining [Plaintiff's] blood pressure was complicated due to him receiving dialysis three times a week.   It is normal for patients to have an elevated blood pressure prior to dialysis and a low blood pressure after dialysis.   [Plaintiff's] blood pressure was appropriately monitored by the medical staff, including Dr. Daniel and Dr. Vowell, as well as the dialysis team."   *Id.* ¶ 6. Finally, according to Dr. Braswell, "[m]anagement of [Plaintiff's] hypertension was also complicated by his refusal to comply with his medications.   [Plaintiff] would often refuse blood pressure medications in the morning and before dialysis.   Medical staff appropriately counseled [Plaintiff] on the importance of taking his medication."   *Id.* ¶ 7.

Regarding "high-top" shoes, Dr. Braswell says:

[Plaintiff] was prescribed high-top shoes in the 1980s when he was initially incarcerated.   The high-top shoes were prescribed to properly stabilize his ankles during ambulation.   In May 2021, [Plaintiff] reported that his high-top shoes had been disposed of.   However, after his April 2021 spinal surgery, [Plaintiff] was no longer ambulating and depended on a wheelchair.   [Plaintiff] was seen by an outside medical provider, Arkansas Orthotics and Prosthetics, to assess his further need for high-top shoes.   Leland Felix, CPO determined that [Plaintiff] did not need high-top shoes because he was no longer ambulating.   Dr. Daniel agreed with CPO Felix and ordered [Plaintiff] medical shoes, but not high-tops.   Due to his use of a wheelchair and non-ambulatory status, there was no medical reason to order [Plaintiff] high-top shoes.   *Id.* ¶ 8.

In sum, Dr. Braswell asserts that he "believe[s] that the medical care and treatment provided to [Plaintiff] by Wellpath, LLC, Dr. Thomas Daniel, Dr. Nannette Vowell and Lakeshia Harris was appropriate, adequate and timely."   *Id.* ¶ 9.   Further, Dr. Braswell asserts that he

"believe[s] to a reasonable degree of medical certainty that the medical treatment provided by Wellpath, LLC, Dr. Thomas Daniel, Dr. Nannette Vowell, and Lakeshia Harris in relation to [Plaintiff's] hypertension met the standard of care for medical providers in engaged in the same type of practice or specialty in the locality."   (Ex. A, Supp. Aff. Braswell ¶ 3, ECF No. 41-1).

For his part,[2] Plaintiff says that he does not take his blood pressure medication in the mornings before dialysis at the direction of medical personnel.   (Pl. Resp. Def. State. Facts & Add'l Facts ¶ 10, ECF No. 37).   Plaintiff says that he was consistent in taking his blood pressure medication, except when medical professionals advised him not to take it.   *Id.* ¶ 18(B). Plaintiff's medical records, however, cast some doubt on this assertion.   For example, a note in Plaintiff's medical record dated June 27, 2021, says that "[p]atient reports he will not take his BP medications sometimes b/c he sleeps in & his BP can be 200 to 160s systolic at that time.   He doesn't take it prior to dialysis he says b/c he will fall to [sic] low in dialysis.  ...."   (Ex. 9 at p. 1, ECF No. 32-9).   But Plaintiff maintains that the medical records provided by the Defendants in support of their Motion for Summary Judgment "are incomplete and contain actual factual errors." (Pl.'s Resp. to Def.'s Mot. Summ. J. ¶ 5, ECF No. 35).

Plaintiff contests Defendants' assertion that his blood pressure was "well controlled." (Pl.'s Resp. to Defs.' State. Facts & Add'l Facts ¶ 16, ECF No. 37).   Plaintiff says that if his

---

[2] In response to Defendants' Motion for Summary Judgment and Supplement, Plaintiff submitted "Plaintiff's Response to Defendants' Motion for Summary Judgment," "Plaintiff's Response to Defendants' Brief in Support of Summary Judgment," "Plaintiff's Response to Defendants' Statement of Facts; and Additional Facts," and "Plaintiff's Supplemental Statement of Undisputed Facts."   (ECF Nos. 35-37, 54).   Because Plaintiff signed all these submissions under penalty of perjury, *see id.*, the Court views them as Plaintiff's affidavits in opposition to Defendants' Motion for Summary Judgment.   Accordingly, this Court considers these filings along with the verified complaint to determine whether there are any material fact disputes that would preclude granting summary judgment.   *See Ward v. Moore*, 414 F.3d 968, 970 (8th Cir. 2005) (a verified complaint is the equivalent of an affidavit and can serve as a response to the defendants' motion for summary judgment under Fed. R. Civ. P. 56(e)).

hypertension had been under control, new medication would not have been necessary. *Id.* Plaintiff concedes that Defendant Daniel was treating his hypertension, but he maintains that Defendant Daniel failed to adjust his treatment to properly control his hypertension, particularly considering that he also received dialysis. *Id.* ¶ 37.

Similarly, Plaintiff says that he threw out his high-top shoes at the direction of corrections officers. (Pl. Resp. Defs.' State. Facts & Add'l Facts ¶ 8, ECF No. 37).   Plaintiff says that Defendant Harris told him to "turn in" the footwear only after he followed the directive of the corrections officers and threw them out. *Id.* ¶ 34.   Plaintiff contends that his request for new footwear was initially denied because he did not "turn them in" as Defendant Harris had instructed, even though Defendant's Harris's instructions were contrary to Plaintiff's 30-years of experience. *Id.*   According to Plaintiff, his request for high-top shoes was later denied because he was purportedly "non-ambulatory." *Id.*   But Plaintiff says that he is non-ambulatory only because he does not have the proper footwear—i.e., high-top shoes—to walk. *Id.* ¶ 10.

According to Plaintiff, "(A) he suffers from 'foot drop,' a dragging of the foot while walking, (B) his foot (the left) is also atrophied and very narrow; (C) as part of his orthotics, he uses a 'heel wedge' [...] when walking.   Taken together this means that [his] foot will ALWAYS slip out of a low-top shoe that is not secured around the ankle when walking." *Id.* ¶ 29.   Plaintiff says that he would walk daily when he had the appropriate shoes. *Id.* ¶ 32.   Plaintiff says that his legs have weakened because he has not been provided the proper shoes so that he can walk. *Id.* ¶ 35.   Plaintiff also says that Dr. Braswell's affidavit is based on misinformation, such as the claim that Plaintiff is non-ambulatory, and contains factual errors. *Id.* ¶ 39.   Plaintiff also notes that Dr. Braswell never examined him.

## IV.    ANALYSIS

Plaintiff asserts claims under 42 U.S.C. § 1983 and Arkansas state tort law.[3]   This Court starts with the § 1983 claims.

### A.  42 U.S.C. § 1983 Claims

"In order to prevail on a § 1983 claim, the plaintiff must show that the defendant caused the deprivation of a federal right while operating under color of state law."   *Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826, 830 (8th Cir. 2005).   Plaintiff claims that Defendants Wellpath, Daniel, and Harris denied him a prescription for "high-top shoes," and that Defendants Wellpath, Daniel, and Vowell failed to properly manage his high blood pressure, in violation of the Eighth Amendment prohibition on cruel and unusual punishment.   (Complaint; ECF No. 1).   Plaintiff sues the Defendants in their individual and official capacities.   The Court considers each of the claims, in turn, below.

### 1.  "High-top" Shoes

Plaintiff says that he requires "high-top" shoes.   (Complaint; ECF No. 1).   There is no material fact dispute that Plaintiff's left side has "atrophied," and that he suffers from "left foot drop with weakness."   (Ex. 10 at p. 1, ECF No. 32-10).   Thus, the Court assumes for the purposes of summary judgment that Plaintiff suffers from an objectively serious medical need.

The question, then, is whether a rational trier of fact could find that the Defendants were deliberately indifferent to his serious medical need.

There is no material fact dispute that to walk, the Plaintiff requires high-top shoes to secure

---

[3] Because Plaintiff has clarified that his Complaint does not assert any specific claim under the Americans with Disabilities Act ("ADA"), this Court no longer views Plaintiff as bringing a separate claim under the ADA.   (ECF No. 40).   Defendants' arguments on summary judgment with respect to the ADA are therefore moot.

a brace that stabilizes his ankles.   (Ex. 1, Aff. Braswell ¶ 8, ECF No. 32-1; Pl.'s Resp. Defs.' State. Facts & Add'l Facts ¶ 29, ECF No. 37).   There is also no dispute that Plaintiff had been issued special "high-top" shoes in the past, but that he reported he had thrown them away on May 26, 2021, because "they were torn and not fit to wear."   (Ex. 7 at p. 1, ECF No. 32-7).   Indeed, the medical notes from Plaintiff's May 26, 2021, medical appointment observe that "the left shoe was for sure in bad shape."   *Id.*   At that appointment, Plaintiff requested another pair of high-top shoes, and the provider noted that he "will follow up with Mrs. Harris and get back to inmate on the shoe replacement."   *Id.* at p. 2.

One month later, on June 24, 2021, Plaintiff arrived for a "walk-in" health care visit "in a wheelchair & shower shoes NOT wearing his high-tops . . ."   (Ex. 10 at p. 1, ECF No. 32-10). Defendant Daniel's provider notes from Plaintiff's June 27, 2021, "chronic care" visit reflect that "[Plaintiff] reports his left shoe wore out and he threw them in the trash can.   He has not been wearing his braces or walking.   [Plaintiff] needs to be evaluated by Felix for shoes that can have his brace in it."   (Ex. 9 at p. 1, ECF No. 32-9).   He again arrived at that examine "in wheelchair & shower shoes NOT wearing his high-tops."   *Id.* at p. 3.   On September 7, 2021, Leland Felix, CPO, Arkansas Orthotics and Prosthetics, Inc. ("AOP"), evaluated Plaintiff, concluding that "[Plaintiff] is reported to be non-ambulatory, so there is no need for special shoes."   (Ex. 12, ECF No. 32-12).

On September 21, 2021, Plaintiff arrived "in wheelchair & shower shoes NOT wearing his high-tops" for another "chronic care" visit.   (Ex. 14 at p. 1, ECF No. 32-14).   At that visit, Plaintiff again requested "high-top" shoes, but Defendant Daniels denied that request citing the evaluation from Arkansas Orthotics and Prosthetics, Inc.   *Id.*   On January 2, 2022, Plaintiff repeated his request for "high-top" shoes, but Defendant Daniel reportedly told him that he was

following the recommendations from Arkansas Orthotics and Prosthetics, Inc., that he agreed with that recommendation, and that "[he] had asked for patient to get shoes in the past only b/c he reported he wanted to start walking.   However, despite having a brace & shoes, he was always in the wheelchair & not walking."   (Ex. 17 at p. 1, ECF No. 32-17).

"Absent deliberate indifference, inmates do not have a right to receive a specific or desired course of treatment."   *Mace v. Johnson*, Case No. 11-CV-0477 (MJD/LIB), 2014 WL 538580, at *11 (D. Minn. Feb. 11, 2014) (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Prison doctors are "free to exercise their independent medical judgment."   *Id.*   And "disagreement with a doctor's medical treatment decisions is not enough to establish a deliberate indifference claim."   *Id.* (citing *Cooke v. Stanton*, Case No. 08-CV-1175 (MJD/JKK), 2009 WL 42437, at *5-6 (D. Minn. Feb. 18, 2009)).

Here, it is undisputed that Defendant Daniel, a medical doctor, refused Plaintiff's requests for "high-top" shoes.   (*See, e.g.*, Ex. 14 at p. 1, ECF No. 32-14).   The question, then, is whether that decision reflected a reckless disregard of Plaintiff's serious medical need.   *See, e.g.*, *Nur v. Olmsted County,* 563 F. Supp.3d 946, 966 (D. Minn. 2021).

Defendant Daniel says he based his medical decision on the report from AOP, which concluded that Plaintiff did not require "special shoes" because he was "reported to be non-ambulatory."   (*See* Ex. 14 at p. 1, ECF No. 32-14).   But Plaintiff says this information is incorrect; and he claims that he is ambulatory, if provided with the correct supports.   (*See* Pl.'s Resp. Defs.' State. Facts & Add'l Facts ¶ 10(B), ECF No. 37).   Indeed, the report from AOP says that "[Plaintiff] is reported to be non-ambulatory, so there is no need for special shoes."   (Ex. 12, ECF No. 32-12).   Use of the passive voice here is noteworthy—there is no indication of *who* reported that Plaintiff is non-ambulatory or *why* he is reported to be non-ambulatory, i.e., whether

he is voluntarily non-ambulatory or if he is non-ambulatory because he does not have the appropriate footwear.   On this record, a reasonable jury could conclude that Defendant Daniel did not take adequate steps to acquire necessary medical information about Plaintiff's medical condition before rendering a treatment decision, particularly considering it is undisputed that when Plaintiff threw out his high-top shoes, the left shoe was "worn out," suggesting use, and Defendant Daniel's notes in Plaintiff's medical records show that Plaintiff needed to be evaluated for shoes that could "fit his brace."   When viewed in the light most favorable to Plaintiff, these facts suggest that Plaintiff had been wearing his "high-top" shoes, and that such shoes were necessary to fit his brace and accommodate his "left foot drop."   The fact that the summary judgment record reflects that Plaintiff used a wheelchair for medical visits *after* he threw out his shoes further supports Plaintiff's claim that he requires special "high-top" shoes to walk, not, as the Defendants perhaps suggest, that Plaintiff was voluntarily choosing not to walk.   Accordingly, the undersigned finds that there is a material fact dispute about whether Defendant Daniel's medical decision reflected a reckless disregard for Plaintiff's medical condition.   Defendants' Motion for Summary Judgment with respect to Defendant Daniels in his individual capacity for failing to issue Plaintiff high-top shoes should therefore be denied.

Plaintiff also identifies WellPath and Nurse Harris as defendants, in their individual capacities, on this claim.   To establish a plausible § 1983 claim, a plaintiff must allege a "violation of a constitutional right committed by *a person* acting under color of state law."   *Andrews v. City of West Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006) (emphasis added).   There is no material fact dispute that WellPath is not a person.   Defendants' Motion for Summary Judgment on Plaintiff's individual capacity claims against WellPath should therefore be granted.

This leaves Plaintiff's individual capacity claim against Defendant Harris for denying his

request for "high-top" shoes.   "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."   *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006).   As the Court understands it, Plaintiff asserts that Defendant Harris orders the footwear authorized by Defendant Daniel.   (*See* Complaint at p. 5, ECF No. 1).   Defendants offer no facts in dispute of this assertion.   Further, there are no facts in the summary judgment record to suggest that Defendant Harris exercises any independent judgment in determining whether (or when) to order specialty footwear for inmates, or that she was directly involved in the decision denying authorization to order Plaintiff "high-top" shoes.   Absent such facts, Plaintiff has failed to establish as a matter of law that Defendant Harris was personally involved in the decision to deny him "high-top" shoes.   Defendants' Motion for Summary Judgment on Plaintiff's claim against Defendant Harris in her individual capacity for failing to order him "high-top" shoes should therefore be granted.

### 2.   High Blood Pressure

Turning now to Plaintiff's claim that the Defendants Daniel, Vowell, and Wellpath, Inc., have failed to properly manage his high blood pressure, Plaintiff asserts that "Drs. Vowell and Daniels have both had many opportunities to address [the problems related to managing his blood pressure] and failed to reasonably act."[4]   (Complaint at p. 6, ECF No. 1).

There is no fact dispute that Plaintiff has been diagnosed with high blood pressure and that this condition requires treatment.   (Defs.' State. Undisputed Facts ¶ 2, ECF No. 32).   The

---

[4] In Plaintiff's Response to Defendants' Brief in Support of Summary Judgment, Plaintiff advises the Court that he is no longer pursuing this claim against Defendants Vowell and Wellpath. (Resp. at p. 5, ECF No. 36).   Plaintiff's position is well-taken.   For the reasons outlined above, the Court finds that there is no material fact dispute that would preclude granting summary judgment with respect to any of these Defendants. Accordingly, the Court recommends that Defendants' Motion for Summary Judgment be granted as to this claim.

question on summary judgment, then, is whether a rational trier of fact could find that the above-named Defendants failed to provide him with constitutionally adequate care.   On the record before the Court, the Court finds that it could not.

"A plaintiff can show deliberate indifference in the level of care provided in different ways, including showing grossly incompetent or inadequate care, showing a defendant's decision to take an easier and less efficacious course of treatment, or showing a defendant intentionally delayed or denied access to care."   *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015) (internal citations omitted).

In this case, Plaintiff's medical records are replete with examples of Defendants Daniel and Vowell responding to Plaintiff's high blood pressure.

- On May 31, 2021, Plaintiff went to the Health Services Office, complaining of nausea and vomiting.   He presented with high blood pressure, Defendant Daniel was notified, and Defendant Daniel ordered that his vitals be checked again in an hour and that he be contacted if Plaintiff's blood pressure was still high.   (Ex. 8, ECF No. 32-8).

- On June 24, 2021, Plaintiff went to the Health Service Office, complaining of "feeling weird and having CP."   Defendant Daniel ordered an EKG and noted that he "needs to be evaluated by cardiology."   (Ex. 10, ECF No. 32-10).

- On May 25, 2022, Defendant Daniel examined Plaintiff when he returned from the Pulaski Surgical Center.   Plaintiff's blood pressure was elevated, and Defendant Daniel ordered clonidine, hydralazine, and carvedilol to be given STAT.   Plaintiff was ordered to stay in the clinic for observation, but he left.   (Ex. 24, ECF No. 32-24).

- On March 10, 2021, Defendant Daniel renewed Plaintiff's Lisinopril prescription. (Ex. 3, ECF No. 32-3).   Defendant Daniel renewed that prescription again on

September 7, 2021 (Ex. 13, ECF No. 32-13), and on March 9, 2022 (ECF No. 20, ECF No. 32-20).

- On April 26, 2021, Defendant Daniel renewed Plaintiff's prescription for Clonidine. (Ex. 6, ECF No. 32-6).   Defendant Daniel renewed that prescription again on October 22, 2021 (Ex. 16, ECF No. 32-16), and on April 23, 2022 (Ex. 23, ECF No. 32-23).

- On October 11, 2021, Defendant Daniel ordered Hydralazine for Plaintiff.   (Ex. 15, ECF No. 32-15).   He renewed that prescription on April 11, 2022.   (Ex. 22, ECF No. 32-22).

- On January 6, 2022, Defendant Daniel ordered Amiodipine for Plaintiff.   (Ex. 18, ECF No. 32-18).   Defendant Daniel renewed that prescription on July 7, 2022.   (Ex. 26, ECF No. 32-26).

Further, Plaintiff's medical records show that Defendant Daniel repeatedly counseled him on the importance of taking his blood pressure medication as prescribed.   (*See, e.g.*, Ex. 9 at p. 2, ECF No. 32-9; Ex. 14 at p. 2, ECF No. 32-14; and Ex. 25 at p. 3, ECF No. 32-25).

Regarding Defendant Vowell, Plaintiff's medical records show that on April 9, 2021, Defendant Vowell examined Plaintiff, who was complaining of chest pain.   Defendant Vowell noted an "abnormal EKG" and ordered him to be transported to the hospital for further evaluation. (Ex. 2, ECF No. 32-2).

Moreover, Defendants' Motion for Summary Judgment includes an affidavit from Dr. Braswell, M.D., who reviewed Plaintiff's medical records and concluded that the Defendants' treatment of Plaintiff's high blood pressure was appropriate.   (Ex. 1, ECF No. 32-1).

Although Plaintiff disputes this claim, Plaintiff cannot create a question of fact for trial simply by asserting that he does not feel as though this treatment was adequate.   *See Carnahan*,

132 F.3d at 1240 ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment.").   The summary judgment record shows that Defendants Daniel and Vowell responded to Plaintiff's complaints, conducted tests, made referrals for additional testing and treatment, prescribed medications, and renewed those medications, and repeatedly counseled Plaintiff on the importance of taking his medications.   Considering this record, along with the Defendants' expert witness affidavit from Dr. Braswell, the undersigned finds that the care Plaintiff received with respect to his high blood pressure did not "so deviat[e] from professional standards that it amounted to deliberate indifference." *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990).

Plaintiff, however, contends that treatment he received by Defendants Daniel and Vowell was not adequate, as evidenced by the fact that Defendant Daniel continued to prescribe him different medications for his blood pressure.   (Pl.'s Resp. Defs.' State. Facts & Add'l Facts ¶ 16, ECF No. 37).   As explained above, however, inmates have no "right to receive a particular or requested course of treatment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Indeed, "doctors remain free to exercise their independent medical judgment." *Id.*   Thus, "a prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation." *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1118-19 (8th Cir. 2007).   Contrary to Plaintiff's claim about the "high-top" shoes, Plaintiff does not dispute any of the underlying facts Defendants relied upon in exercising their medical judgment.   Instead, Plaintiff contends that Defendants should be doing something else (or better) to control his high blood pressure.   This is exactly the type of medical treatment disagreement that does not give rise to a constitutional violation.   Accordingly,

Defendants' Motion for Summary Judgment on Plaintiff's claim that the Defendants failed to properly treat his high blood pressure should be granted.

### 3. Official Capacity Claims

Plaintiff sued the Defendants in both their individual and official capacities. There appears to be no dispute that WellPath is the medical provider for the ADC. "When a government contracts with a third party to fulfill a constitutional duty, such as providing medical care, official capacity claims against the third party's employees are treated as claims against the third party itself." *Proctor v. Foltz*, Case No. 4:18-CV-05015, 2019 WL 137611, at *3 (W. D. Ark. Jan. 8, 2019) (citing *Cannady v. Cradduck*, Case No. 5:16-CV-05039, 2016 WL 4432704, at *1-2 (W.D. Ark. Aug. 18, 2016)). Thus, Plaintiff's official capacity claims against WellPath employees are viewed as being against WellPath.

In the Eighth Circuit, to establish an official capacity claim, "individual liability must first be found on an underlying substantive claim." *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) (listing cases). Here, the only individual capacity claim remaining is Plaintiff's claim that Defendant Daniel's failure to authorize "high-top" shoes amounts to deliberate indifference in violation of the Eighth Amendment. The undersigned recommends that no other § 1983 claim survive summary judgment. The question, then, is whether there is a material fact dispute precluding summary judgment on Plaintiff's *official* capacity claim regarding this same conduct. There is not.

"[A] corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies." *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (citing *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 (1978)). "There are two basic circumstances under which municipal [or institutional] liability will attach: (1) where a

particular [institutional] policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful [institutional] policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." *Cannady*, 2016 WL 4432704 at \*2 (quoting *Moyle v. Anderson*, 571 F.3d 814, 817-18 (8th Cir. 2009)).

In support of his official capacity claim, Plaintiff asserts that he previously filed a federal civil rights lawsuit alleging that a different medical provider employed by WellPath denied his request for "high-top" shoes.   (Complaint at 5, ECF No. 1).   Defendants do not dispute this fact. This undisputed fact by itself, however, does not preclude summary judgment on Plaintiff's official capacity claim.   First, Plaintiff asserts no facts that Defendant Daniel acted pursuant to official policy in denying his request for "high-top" shoes, and that it was *this policy* (as opposed to Defendant Daniel's failure to adequately consider his medical condition) that caused his constitutional injury.   *See Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 633-34 (8th Cir. 2009) (affirming summary judgment on plaintiff's official capacity claims on the grounds that plaintiff failed to point to "any officially accepted guiding principle or procedure that was constitutionally inadequate").

Second, to the extent that Plaintiff claims that this pending lawsuit combined with his previous lawsuit is sufficient to demonstrate an unconstitutional "custom," the undersigned is not persuaded.   "[A] custom can be shown only by adducing evidence of a 'continuing, widespread, persistent pattern of unconstitutional conduct.'"   *Id.* at 634 (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)).   "A plaintiff must also show either that policy makers were deliberately indifferent to the misconduct or that they tacitly authorized it."   *Id.*   Even if the circumstances surrounding the previous incident are *identical* to those now pending before the Court, the undersigned doubts that two instances, years apart, constitutes a "continuing,

19

widespread, persistent pattern." Yet, more detrimental here, there are no facts to suggest that the relevant policy makers were aware of the conduct and then ignored it. *See Mettler*, 165 F.3d at 1205 ("[T]he mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging [unconstitutional conduct].").

Accordingly, Summary Judgment should be granted on Plaintiff's official capacity claims.

### B. Arkansas State Tort Law

This leaves Plaintiff's supplemental claims asserting negligence and medical malpractice under Arkansas state tort law. (Complaint at pp. 7-8, ECF No. 1).

Plaintiff asserts that Defendants Vowell, Daniel, and Harris were negligent and committed medical malpractice in refusing to authorize him to receive "high-top" shoes and failing to properly control his high blood pressure. *Id.* Defendants assert that these claims do not survive summary judgment because Plaintiff has failed to comply with the Arkansas Medical Malpractice Act, *see* Ark. Code Ann. § 16-114-201, *et. seq.* (*See* Supp. Brief Supp. Mot. Summ. J. at p. 1, ECF No. 41). The undersigned agrees.

The Arkansas Medical Malpractice Act ("the Act") applies to all causes of action for medical injury. *See* Ark. Code Ann. § 16-114-202. "Medical injury" under the Act is defined as "any adverse consequences arising out of or sustained in the course of the professional services being rendered by a medical care provider to a patient or resident, whether resulting from negligence, error, or omission in the performance of such services; . . . or otherwise arising out of or sustained in the course of such services." Ark. Code Ann. § 16-114-201(3).

Plaintiff's medical malpractice and negligence claims against the medical providers for failing to properly manage his high blood pressure or treat his "left foot drop" by authorizing "high-top" shoes clearly meets the definition of "medical injury" under § 16-114-202. The

Arkansas Medical Malpractice Act, therefore, applies to these claims.

Pursuant to the Act, "unless the asserted negligence could be comprehended by a jury as a matter of common knowledge, the plaintiff has the burden of proving three propositions by expert testimony: the applicable standard of care; that the medical provider failed to act in accordance with that standard; and that such failure was the proximate cause of the plaintiff's injuries." *Stewart v. Deaton*, 618 S.W.3d 181, 185 (Ark. Ct. App. 2021) (citing Ark. Code Ann. § 16-114-206(a)). The Arkansas Supreme Court, moreover, has held that "the defendants/movants in a medical-malpractice case [have] met their burden of proving a prima facie case for summary judgment by showing that the plaintiff has no expert to testify as to the breach of the applicable standard of care." *Id.* (citing *Skaggs v. Johnson*, 915 S.W.2d 253 (1996)).

Defendants have noted such an omission here.   (*See* Supp. Brief Supp. Mot. for Summ. J. at p. 4, ECF No. 41).   Indeed, the summary judgment record contains no expert witness affidavit asserting that the Defendants failed to act within the appropriate standard of care.   To the contrary, in further support of their Motion for Summary Judgment, Defendants offer the Supplemental Affidavit of Dr. Thomas Braswell, M.D., which offers his medical opinion "that the medical treatment provided by [Defendants] in relation to [Plaintiff's] hypertension met the standard of care for medical providers in engaged in the same type of practice or specialty in the locality." (Supp. Aff. Braswell ¶ 3, ECF No. 41-1).   Nor has Plaintiff asserted any facts or argument that the issues of negligence in this case would be within the common understanding of the jury.   *See Stewart*, 618 S.W.3d at 186 (court declined to consider plaintiff's argument that negligence issues were within the common knowledge of the jury where plaintiff "failed to provide an explanation and [the court does not] consider arguments without convincing argument or authority").[5]

---

[5] Instead, Plaintiff says that the Act is unconstitutional as applied to him and other ADC inmates

Defendants' Motion for Summary Judgment regarding Plaintiff's state tort claims of negligence and medical malpractice should therefore be granted.

## C.  Request for Attorney

Plaintiff asserts in his Response to Defendants' Supplemental Brief in Support of Motion for Summary Judgment that he needs a lawyer.   (Pl.'s Resp. Defs.' Supp. Brief at p. 3, ECF No. 53).   He says that the inmate who was assisting him fears that he will "get into trouble" if he continues to help him.

As a threshold matter, to the extent that Plaintiff intends for this request to be considered as a motion to appoint counsel, that request does not comply with Local Rule 7.2.   That said, recognizing that pro se pleadings are to be liberally construed, this Court nevertheless views Plaintiff's request as a Motion to Appoint Counsel.   For the reasons outlined below, that Motion should be denied.

A civil litigant does not have a constitutional or statutory right to court-appointed counsel in a civil action, but the Court may appoint counsel at its discretion.   *See* 28 U.S.C. § 1915(e)(1). In this case, the Court has considered the need for an attorney, the likelihood that Plaintiff will benefit from assistance of counsel, the factual and legal complexity of the case, and whether Plaintiff has the ability to investigate and present this case.   In considering these factors, the undersigned finds that the claims do not appear legally or factually complex, and that Plaintiff is adequately prosecuting this case at this time.   Thus, the Court finds Plaintiff is capable of prosecuting his claims without appointed counsel.   Indeed, at this time, there are no matters

---

because they do not have the means to contact Arkansas physicians to solicit expert affidavits in support of their medical malpractice claims.   (Pl.'s Resp. Defs.' Suppl. Brief at p. 2, ECF No. 53). Plaintiff's Complaint, however, does not challenge the constitutionality of the Arkansas Medical Malpractice Act.   This argument, therefore, is not properly before the Court.

pending before the Court requiring Plaintiff's response.   At a later stage in the case, Plaintiff may again request appointment of counsel if Plaintiff believes the circumstances justify such an appointment.

### V.    CONCLUSION

For the reasons and upon the authorities discussed in detail above, the undersigned recommends that: (1) Defendants' Motion for Summary Judgment be **DENIED** with respect to Plaintiff's individual capacity claim against Defendant Daniel for refusing to authorize "high top" shoes; and (2) Defendants' Motion for Summary Judgment be **GRANTED** in all other respects.

Further, to the extent that Plaintiff has filed a Motion to Appoint Counsel (ECF No. 53), that request is **DENIED** at this time.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).   The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 16th day of January 2024.

/s/ *Mark E. Ford*
_____
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE